Filed 3/14/16  In re A.L. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re A.L., a Person Coming Under the Juvenile Court Law. | |
| | D068988 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J519198) |
| v. | |
| D.L., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Kimberlee A. Lagotta, Judge.  Affirmed.

Elizabeth C. Alexander, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Lisa M. Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

D.L. appeals the judgment entered following the jurisdiction and disposition hearing in the juvenile dependency case of his minor daughter A.L. He contends the evidence was insufficient to support the court's jurisdictional finding under Welfare and Institutions Code section 300, subdivision (b).[1] We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On May 29, 2015, the San Diego County Health and Human Services Agency (the Agency) petitioned the juvenile court under section 300, subdivision (b) on behalf of one-year-old A.L. The Agency alleged that A.L. suffered second degree burns on her abdomen and left thigh while D.L. was bathing her. The Agency further alleged that D.L. became angry with hospital staff when he was told they wanted to admit A.L., refused to allow A.L. to be taken from him, and had to be removed from the hospital by law enforcement. A.L.'s mother, Erica R., was incarcerated in state prison.[2] The Agency concluded that A.L.'s parents were unable and unwilling to provide care for A.L. and she had suffered or was at substantial risk of suffering serious physical harm or illness.

In its detention report, the Agency described the circumstances leading to the involvement of the Agency. D.L. told the Agency he was legally blind. When he was bathing A.L., he mistakenly turned off the cold water faucet instead of the hot water faucet. Hot water continued to flow over A.L. and caused her burns. D.L. brought A.L. to a hospital, where medical personnel told D.L. to take A.L. to a specialized burn center

---

[1]    Further statutory references are to the Welfare and Institutions Code.

[2]    Erica is not a party to this appeal and will be discussed only where necessary.

2

within a few days. The next day, D.L. took A.L. to the University of California, San Diego Medical Center. A doctor examined A.L. and told D.L. that A.L. should be admitted. D.L. became angry. When a hospital social worker tried to speak with D.L., he was hostile and uncooperative. D.L. did not appear to understand what he was told and was unable to control his emotions. Law enforcement removed D.L. from the hospital, and in accordance with hospital policy D.L. was barred from entering the hospital for seven days. When an Agency social worker contacted D.L. in jail, he continued to be hostile and shouted obscenities. During a later discussion, D.L. was more cooperative with the Agency but did not appear to fully understand the information provided by the social worker. The Agency later learned that D.L. had swallowed a large amount of crack cocaine 12 years ago, which caused D.L.'s blindness and other brain damage.[3] The Agency contacted A.L.'s maternal grandmother, Robin B., who described D.L. as "attentive" and "loving" but was concerned about his ability to care for A.L. The maternal grandmother claimed she provided primary care for A.L.

At the detention hearing, the juvenile court found that the Agency had made a prima facie showing under section 300, subdivision (b). A.L. was placed in foster care. The court ordered liberal supervised visitation for D.L.

A month later, the Agency reported that D.L. had made threatening statements towards Agency staff and A.L.'s foster parent. The Agency intended to move D.L.'s

---

[3]    An Agency investigation revealed that D.L. had an extensive criminal history in California and other states. D.L. admitted to selling and using illegal drugs in the past, but he denied any current involvement with drugs.

3

visits with A.L. to a secure location such as a police station. While D.L. acted appropriately toward A.L. during visits, his behavior toward others was concerning and erratic. At a special hearing, the juvenile court determined that D.L. was not competent to participate in the dependency proceedings and appointed a guardian ad litem for him. The court also reduced the frequency of D.L.'s visits with A.L. to once per week, with discretion to allow unsupervised and extended visits.

In its initial jurisdiction and disposition report, the Agency recommended that the court sustain the allegations of the petition and continue A.L.'s placement in out-of-home care. The Agency expressed its concerns as follows: "[D.L.] wants his daughter returned to him, and it is obvious that he loves her and the injury to his daughter was accidental. However, [D.L.] does have problems with anger, he can be impulsive, and [he] has created high risk safety concerns from the Agency, [c]ourts, and the community."

In advance of the jurisdiction and disposition hearing, D.L. successfully participated in several services offered by the Agency and community groups. D.L.'s visitation with A.L. was moved from the police station to a more conventional location and then progressed to unsupervised visits. The Agency reported that the visits were going well. The Agency convened a team decision meeting (TDM) to discuss A.L.'s possible return to D.L.'s care. The Agency reported that D.L. had no further problems with anger or hostility toward the Agency or others. The Agency therefore changed its recommendation regarding disposition: "Based on [D.L.]'s positive interactions with the Agency, his demonstrated commitment to [A.L.], [and] his willingness to engage in

4

services and increase his support network, the Agency is recommending that [A.L.] be placed in the home of [D.L.] while [D.L.] continues to participate in services."

At the hearing, the Agency requested that its petition be amended to delete the phrase alleging that D.L. was "unwilling" to provide care to A.L. The juvenile court granted the Agency's request. The court received several Agency reports into evidence; no party presented live testimony. A.L.'s counsel agreed with the Agency's recommendation and urged the court to find the allegations of the petition true. D.L.'s counsel asked the court to dismiss the Agency's petition, arguing that D.L. had made substantial progress since A.L.'s accidental injury and A.L. was not at risk of injury in his care.

The court sustained the allegations of the petition and placed A.L. with D.L. The court found that A.L.'s initial injury was not willfully inflicted. However, the court believed D.L. was negligent and dependency jurisdiction over A.L. was necessary to prevent additional injury. D.L. appeals.

DISCUSSION

D.L. challenges the court's jurisdictional finding under section 300, subdivision (b). That statute provides, in relevant part, as follows: "A child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court: [¶] . . . [¶] (b)(1) The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, . . . or by the inability of the parent or guardian to provide

5

regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse."

Jurisdiction under this subdivision may continue "only so long as is necessary to protect the child from [the] risk of suffering physical harm or illness." (§ 300, subd. (b)(1).) A jurisdictional finding must therefore be supported by evidence that the minor is subject to the defined risk of harm at the time of the jurisdiction hearing. "[E]vidence of past events may have some probative value in considering current conditions. But under section 300, subdivision (b) this is only true if circumstances existing *at the time of the hearing* make it likely the children will suffer the same type of 'serious physical harm or illness' in the future." (*In re Janet T.* (2001) 93 Cal.App.4th 377, 388, fns. omitted.) " 'Thus[,] previous acts of neglect, standing alone, do not establish a substantial risk of harm; there must be some reason beyond mere speculation to believe they will reoccur.' " (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1394, italics omitted.)

Our standard of review is well-settled: " 'On appeal, the "substantial evidence" test is the appropriate standard of review for both the jurisdictional and dispositional findings.' " (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1022.) " 'In juvenile cases, as in other areas of the law, the power of an appellate court asked to assess the sufficiency of the evidence begins and ends with a determination as to whether or not there is any substantial evidence, whether or not contradicted, which will support the conclusion of the trier of fact. All conflicts must be resolved in favor of the respondent and all legitimate inferences indulged in to uphold the verdict, if possible.' [Citation.] ' "If the

6

evidence so viewed is sufficient as a matter of law, the judgment must be affirmed . . . ." ' [Citation.]" (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 820.) "Thus, we do not consider whether there is evidence from which the dependency court could have drawn a different conclusion but whether there is substantial evidence to support the conclusion that the court did draw." (*In re Noe F.* (2013) 213 Cal.App.4th 358, 366.)

" ' "However, substantial evidence is not synonymous with any evidence. [Citations.]  A decision supported by a mere scintilla of evidence need not be affirmed on appeal.  [Citation.]  Furthermore, '[w]hile substantial evidence may consist of inferences, such inferences must be "a product of logic and reason" and "must rest on the evidence" [citation]; inferences that are the result of mere speculation or conjecture cannot support a finding [citations].'  [Citation.]  'The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record.' " ' "  (*In re Drake M.* (2012) 211 Cal.App.4th 754, 763, italics omitted.)

The juvenile court here could reasonably find that D.L.'s brain damage and inability to control his emotions rendered him unable to properly care for A.L. after her accidental injury.  Although D.L. initially sought medical treatment for A.L., he attempted to prevent medical personnel from admitting her to the hospital to provide needed care.  D.L.'s reaction caused him to be removed from the hospital by law enforcement and led to his exclusion from the hospital for seven days.  D.L.'s inability to care for A.L. was further shown by his hostile treatment of Agency social workers and his apparent inability to understand medical information and the juvenile court proceedings.  The court could reasonably conclude that D.L.'s hostility and lack of

7

understanding severely inhibited D.L.'s ability to make appropriate decisions regarding A.L.'s care. The evidence supports the finding that A.L. was at substantial risk of serious physical harm or illness as a result of D.L.'s neglect.[4]

Although D.L. had participated in services and his attitude had markedly improved by the time of the jurisdiction and disposition hearing, that improvement had occurred only with the involvement of the court and the Agency. Given the severity of the problems exhibited by D.L. at the outset of the case, the juvenile court could reasonably find that A.L. remained at substantial risk of serious physical harm or illness at the time of the hearing. A.L. was a very young child, and D.L.'s past actions showed he had the potential to neglect A.L. to the point of preventing her from obtaining necessary medical care. The causes of D.L.'s neglect were deep-seated (including brain damage D.L. had suffered more than a decade earlier), and the juvenile court was entitled to find that these causes had not been resolved by the time of the jurisdictional hearing and that A.L. remained at risk in D.L's care. (See *In re Janet T.*, *supra*, 93 Cal.App.4th at p. 388.) We therefore disagree with D.L.'s claim that no protective issue existed at the time of the hearing.

D.L. focuses on the accidental nature of the injury and his initial attempts to obtain medical care for A.L. D.L. argues that he cared for A.L. properly and did not neglect her. While D.L. never directed any hostility or inappropriate behavior toward A.L., the

---

4    In passing, D.L. claims A.L. did not suffer serious physical harm or illness and was not at substantial risk of such. The juvenile court, however, could reasonably find that D.L.'s neglect could have prevented A.L. from obtaining needed medical treatment for her severe burns, which put A.L. at risk of serious physical harm.

juvenile court could reasonably find that his brain damage and intentional behavior toward others (including medical personnel) rendered him unable to care for A.L.  For example, D.L. attempted to prevent medical personnel from admitting A.L. into the hospital to treat her second degree burns and then effectively removed himself from involvement in her care by reacting to medical personnel with such hostility he had to be removed from the hospital by law enforcement.[5]  D.L.'s subsequent hostility to the Agency and his lack of understanding compounded his inability to care for A.L.  While the evidence supports the inference D.L. did not *intend* to neglect A.L., the juvenile court could reasonably find that D.L. did in fact neglect her, which is sufficient under the statute.

D.L. relies on *In re John M.* (2013) 212 Cal.App.4th 1117 (*John M.*), where the Court of Appeal affirmed a jurisdictional finding under section 300, subdivision (b).  D.L. contends the facts here are distinguishable from *John M.* and therefore the juvenile court's jurisdictional finding should be reversed.  *John M.* did not imply, much less state, that its facts were necessary for a jurisdictional finding under section 300, subdivision (b).  *John M.* therefore has little relevance to the issues in this case.  We conclude the facts here were sufficient to support the juvenile court's jurisdictional finding as well for the reasons we have stated.

---

5    D.L. argues that his emotional response to the possibility of A.L.'s admission to the hospital "does not translate . . . to an informed denial of consent for his daughter's treatment."  A denial of treatment, however, need not be "informed" in order to be neglectful.  An emotional, irrational reaction to needed medical treatment may also constitute neglect, including under the circumstances here.

D.L. also contends *In re Isabella F.* (2014) 226 Cal.App.4th 128 (*Isabella F.*) supports his position. We disagree. In that case, the juvenile court made a jurisdictional finding under section 300, subdivision (b) based on the actions of an absent father two years before the dependency petition was filed. (*Isabella F.*, at p. 140.) The Court of Appeal held this evidence was insufficient to support the finding: "There is no evidence in the record that Isabella was in father's care at the time of these events or was affected by them or that she even knew about them. Isabella reported that it had been a long time since she had seen father, and the record contains no indication that father is or will be involved in her life." (*Ibid.*) Here, D.L. was involved in A.L.'s life, and his neglect directly placed her at risk. The allegations of the petition involving D.L. are not comparable to the allegations at issue in *Isabella F.*

## DISPOSITION

The judgment is affirmed.

BENKE, J.

WE CONCUR:


McCONNELL, P.J.


AARON, J.

10